The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Robert J. Steigman presiding. Thank you, Mr. Bailiff. Our last case for this afternoon. Good afternoon, Counselor. Last case for this afternoon is 424-0645. Hamlin is the Executive of the State of Whorrall versus... I'm not sure how to pronounce it. Someone MD in Advanced Women's Healthcare, SC. I'll just leave it at that. I'll help you out, Your Honor. It's Ogin Lee. Thank you. Thank you. I'll ask the Counsel to identify yourselves for the record, please. First, Counsel for the Appellate. Chase Mulchin, Your Honor. Thank you. And Counsel for Appellee? Jonathan Bobel. Thank you. Mr. Mulchin, on behalf of the Appellant, you may make your argument at this time, sir. May it please the Court and Counsel. The primary issue before the Court right now is the language of the statute of repose. The statute bars claims for medical malpractice cases filed more than four years after the date on which the alleged act or omission occurred. And that statute applies to four categories of healthcare providers, physicians, dentists, registered nurses and hospitals. The statute states that those providers must be duly licensed under the laws of this state. The defendant at issue in this case, Advanced Women's Healthcare, I will probably refer to them as AWH, is a — it's an alleged medical corporation. That is not one of the four categories of healthcare providers specifically listed in the statute of repose. And at the time of plaintiff's treatment in this case, AWH was not licensed under the Medical Corporation Act. It is our position that because AWH was not licensed under the Medical Corporation Act, that it was not duly licensed under the laws of this state. And therefore, the statute of repose is inapplicable to AWH. Therefore, the traditional discovery rule should apply. That's found at 735 ILCS 5-13-202. And plaintiff's complaint as to Advanced Women's Healthcare was timely filed. The facts of the underlying case here, Your Honor, are that Kathy Worrell underwent a hysterectomy in June 4, 2018. A pathology sample was taken during that procedure and sent to the pathology lab at OSF St. Joseph in Bloomington. On June 11, the pathology report noted a left ovarian tumor with features suggested of a sex core tumor. OSF decided to send that specimen to Mayo Clinic for a consult. And on that same day, June 11, 2018, called AWH and informed them that the pathology results were available in Epic. And there's a fax to that effect. And it also indicated that the results were being sent to Mayo. On June 18, 2018, another pathologist at OSF made an addendum to Worrell's chart confirming that the Mayo consult report agreed that it was a mixed granulosa cell tumor and sex core tumor with annular tubules. I should say after June 11, 2018, Worrell had at least seven appointments at AWH and no one ever told her about the pathology results. Fast forward to December 22 of 2020, Ms. Worrell underwent a biopsy of an abdominal mass. And on December 30, 2020, the pathology results from that biopsy showed that it was the same cancer from the June 11th pathology results. Ms. Worrell did not find out about the 2018 pathology results until an appointment with a cancer surgeon named Rebecca Byler-Dan on January 27th of 2021. She died on May 3rd, 2021. Plaintiff's complaint was filed on November 1st, 2022, less than two years from the date when Ms. Worrell learned that she had a tumor at the time of her hysterectomy on June 4th, 2018. On May 18th, 2023, plaintiff filed an addendum to his complaint alleging institutional negligence against Advanced Women's Healthcare, alleging that it owed administrative and managerial duty to have adequate policies and procedures for notifying its customers of their pathology results. Advanced Women's Healthcare filed a motion for summary judgment arguing that plaintiff's claim was barred by the statute of repose because it was filed more than four years after the hysterectomy and pathology results in June of 2018. The trial court granted that motion on April 1st, 2024. And again, plaintiff's position in this case is that the statute of repose is inapplicable to AWH because it was not duly licensed under the laws of the state. The Illinois Medical Corporation Act can be found at 805 ILCS 15. Section 15.2 allows corporations to be formed to study, diagnose and treat human ailments. Section 15.5 says no corporation shall open, operate or maintain an establishment for those purposes if it does not obtain a certificate of registration from the Illinois Department of Financial and Professional Regulation. Council, let me interrupt. What would be required for AWH to be licensed in your view? Well, they need to apply for a license with the IDFPR, and then an inspection has to incur where the department comes in and make sure that all of the healthcare providers are licensed and that they don't have disciplinary proceedings pending against them and that they're going to operate in accordance with the law. The Department of Regulation or Professional Regulation doesn't issue a license, is that correct? They only do a certificate of registration? Well, I think that that is something that is not delineated specifically by the case law. But if you look in our C-22 to 223 to 225, we – there was an affidavit of my former partner and employer, Jim Ginsky. Members of the public can go on to the IDFPR website and search for a license number for medical corporations. So I think that the certificate of registration and the license are one in the same. You know, when members of the public can search out a license number, they can see, okay, if I'm going to go to treat with this company, are they licensed? And people are able to look that up and there are license numbers. So I think that the certificate of registration is a license. And I think that that is also spelled out in the Rial case that was relied upon by the trial court and discussed heavily in the defendant's brief. In that case, the court specifically stated that the corporation must be licensed. And the citation within the case is a former version of the Medical Corporation Act. And that former citation is now what is 805.15-5. So when the Rial case says that the corporation must be licensed, I believe they are talking about a certificate of registration. So I think that that well, so during the discovery phase, we obtained certifications from IDFPR. The AWH did not and had never had a Medical Corporation license. That's specifically what the document says. And furthermore, there was a second one that said it did not have a Professional Service Corporation license under the Illinois Professional Service Corporation Act. So no license either under the Medical Corporation Act or the Professional Service Corporation Act. And further discovery revealed that when Dr. Ogunle filed the articles of incorporation for AWH back in 2012, he did so using forms from LegalZoom. And to me, that says that he probably didn't seek the advice of counsel when he did that. And based upon what we've seen and shown in this case, he failed to comply with the other requirements of the Medical Corporation Act. And I think that there's an Illinois Supreme Court case that specifically addresses this. It's the Solich case. And that case held that the statute of repose did not apply to a claim against a cancer prevention center that provided screening results because it didn't fall within the four categories of the healthcare providers listed in the statute. Similar situation, I mean, that was a case where a steelworker had a chest x-ray in 1975, and his case was brought in 1984. So nine years later, the appellate court held that the claim was barred by the statute of repose, but the Supreme Court reversed that decision. It emphasized that page 82, the language duly licensed under the laws of this state, and it said where the statute lists things to which it refers, all omissions should be understood as exclusions. In the Solich court, it looked at the prior case of Real versus Kim. And the defendants rely heavily on Real. And at page 436 of Real, that opinion says the corporation must be licensed by the state. I think that that's what the trial court overlooked in this case. And I think a logical reading of the Real decision language means that if a medical corporation is going to qualify as a physician under the statute of repose, it must be licensed. I don't think that there's any other interpretation of that language. Solich went on to distinguish Real, and it stated that Portis was not licensed and that it did not qualify to be licensed. Portis was an Illinois non-for-profit corporation. And Portis argued that it should not be liable because its liability was derivative of the physicians and its employee and that they were protected by the statute of repose. Similar argument to what the defendants are making in this case. The court did note that the verdict in the case was against Portis for its failure as an institution to have adequate procedures for relaying test results. And that is where plaintiff's institutional negligence claim really comes into play in this case. We've alleged institutional negligence in addition to respond to your superior. Counsel, if I can stop you there for just a moment. When I when I look at the kind of purposes of the Medical Practice Act and then the Medical Corporation Act, I think it seems somewhat self-explanatory with regards to the Medical Practice Act that we want individuals that are, you know, providing medical services or surgical treatment or consultation or advice. We want those individuals to be licensed and approved. And they go through what I would call a fairly rigorous process to meet those standards. So that to me seems readily apparent that that is designed along the lines to protect the public health, safety, welfare, if you will. When I think about the Medical Corporation Act, that seems to be designed more so that individuals that want to operate with the benefits of a corporate structure that are already licensed under the Medical Practice Act, that that's giving them the benefits of operating as a corporation. Do you, is there something broader where you feel like the Medical Corporation Act, you could help me understand why that is really designed as something that is there to protect the public health or welfare or safety, if you will? I do. I think that the statute specifically allows an attorney to be the incorporator. So I think that that inspection that's called for within the statute confirms everything that you said that is important about the Medical Practice Act. That act is there, but, you know, without the Corporation Act, the state doesn't have the ability to determine whether the health care providers who may be working at an alleged medical corporation are in fact licensed. That's where I think the inspection is incredibly important. And I can think of, you know, scenarios where, you know, it could be taken advantage of. You know, if an attorney wanted to incorporate and potentially bring in physicians maybe from overseas and have them start doing cosmetic procedures on patients before they go through that rigorous process that you talked about with the Medical Practice Act. With regards to the Medical Corporation Act, I mean, doesn't Section 2 of the MCA mandate that you cannot have directors, shareholders, officers or agents or employees unless they're licensed under the Medical Practice Act? So to me, it seems like that's the prerequisite before we take that next step and start evaluating whether they can do business together and then becoming authorized or receive the Certificate of Registration under the Medical Corporation Act. Well, that is indeed the language of the statute. But I think when read as a whole, that inspection becomes important because, you know, if the documents are sent off to the Secretary of State to incorporate, I don't believe that it's the Secretary of State that is determining whether or not on those applications the doctor or, I mean, if it's incorporated by a lawyer, whether they're licensed under the Medical Practice Act. And so I guess just to confirm and going back to Justice Vancell's initial question, when we talk about AWH, if they had received the Certificate of Registration, you would agree that under the statute of repose they would qualify as a physician if they obtained the Certificate of Registration? I think that based upon the real case and what's hinted at in the Solich opinion, I believe that that would be correct. But I think it's a situation where in order to have the benefit of the law, which the statute of repose, which is the benefit of that law, you need to comply with the other laws that make your medical corporation duly licensed. And I don't think they did that. Separate and apart from the statute of repose, though, there would be benefits that individuals could obtain by incorporating or becoming medical corporations. It's not simply to fit within the statute of repose, correct? You'd agree with that statement? Yeah, I think there are certainly financial advantages, and I think that's why many practitioners do it. I'm not disputing that at all. So if there was an entity that had a Certificate of Registration and then they failed to pay their renewal, if they had originally received that certificate and then by default it lapses, if you will, would they then, during that period of a lapse, no longer receive the benefits of the statute of repose? I think based upon the language of the statute, they would not be duly licensed when that certificate lapses. Thank you. Mr. Moulton, you started to talk about institutional negligence, and I want to make sure I'm clear. You are saying the statute of repose does not apply to institutional negligence cases? Your Honor, in Section 2 of the brief, I'm going to stand on the briefing. I read their response, and that's not what I'm saying here today. I just think that the institutional aspect of this case becomes relevant when we're alleging that they're failing to convey results, right? This isn't a situation where we're questioning the diagnosis, right? They didn't give the patient the opportunity to seek a second opinion. You know, that's a choice that patients should have if they're given their results. In this case, she wasn't given the results. So to me, that ties into the defense argument that all this testimony about the results being handled by people who are unlicensed providers or unlicensed, you know, maybe not even healthcare providers or office staff, that's where we're talking about they need to have a system in place that those results get conveyed irrespective of the doctor's medical judgment on a specific diagnosis. So that's where I think the addendum speaks directly to the corporation as a defendant for institutional negligence. Thank you, counsel. Your time's up. You have an opportunity to address us again in rebuttal. Mr. Bubble, is that pronounced correctly? It is, your honor. Thank you. You may proceed, sir. Thank you. May it please the court, counsel. As you know, there's a four-year statute of repose in medical malpractice actions. The legislature wrote that statute to shorten the long tail of malpractice actions. To find the repose period doesn't apply to a medical corporation simply because they haven't completed an administrative task. And I'll talk about that and why it's administrative and not a licensing issue. But to do that would completely defeat the purpose of the statute of repose. It would alter the landscape of medical malpractice litigation, a landscape that the legislature has created. And the issues in this case have already been decided. They've been decided by appellate courts. They've been decided by the Illinois Supreme Court. There's no reason that this court should stray from that binding precedent. This court should affirm the trial court's grant of summary judgment. And I think counsel has acknowledged that this patient was treated more than four years before the complaint was filed. And so if the statute of repose applies, summary judgment is appropriate here. I'm going to hopefully get to a few points today. And the first and I think most important is that registration under the Medical Corporation Act is not licensure. Those are different things. It's been decided by our Supreme Court. There's precedent. There's a clear rule for this court to follow. And the plaintiff is claiming that AWH was not licensed. I completely disagree. We completely disagree. Dr. Ogenle is a licensed physician that's alleged in the complaint. We admitted that allegation. The corporation is organized under the Medical Corporation Act. Again, in the complaint, we admitted it. That is sufficient for the statute of repose to apply. Second point that I'll get to is that this case arises out of medical care. And that's the standard under which the court is to determine if the statute of repose applies. It's not whether it's an institutional claim or something else. It's the ORLAC case. I'll get there. But because this case arises out of medical care, the statute of repose applies. Now, registration is not licensure. It's not the same thing. And this issue has been decided by the Illinois Supreme Court. And a brief point on why this matters, I think the court's aware. There are four categories of providers protected under that statute. One of them is physician. We've talked about the Ray Alvey Kim court. And they're finding that physician includes a medical corporation. I think counsel has conceded that point. And the Ray Alcourt said that it would be illogical for the legislature to provide that all officers, directors, shareholders, and physician employees of medical corporations could take advantage of the special limitations period provided for actions, med mal actions, but that the corporation itself was subject to the so-called long tail of potential liability, which used to exist for physicians when most malpractice actions were governed by the previous section of the Limitations Act. And Justice Leonard alluded to this, and it's set out on page six of our brief, but I want to be sure the court understands the difference here between the Medical Practice Act and the Medical Corporation Act. The Medical Practice Act contains a licensing requirement. There are competency requirements for physicians. There are moral requirements, character requirements. And if they don't follow those things, there are disciplinary consequences. There's a system that has to be taken care of if physicians are not complying with those things. So that's all within the Medical Practice Act. That regulates the profession. That's how you are licensed. Then there is the Medical Corporation Act. And this act simply provides a means for physicians to form a corporation and practice together. I have read that entire act. I've run a search for the word license. I do not believe there is any licensing requirement within that act. It talks about a certificate of registration, which is an administrative thing. It's not for the health or the protection of public safety. So the Medical Corporation Act is permissive in nature. It sort of grants you rights. It's administrative. And as we've heard, the thrust of plaintiff's argument is that AWH is not licensed because they failed to file a certificate of registration with the Illinois Department of Financial and Professional Regulation. Now, for purposes of this motion, we concede at that point that nothing was filed under the Medical Corporation Act. But again, license and registration are not the same thing. It's like if I were to get pulled over, the officer asked for license and registration. The license shows that I have a competency to drive. The registration shows that I've paid an administrative fee to register my car. It doesn't mean that I don't have a license, right? And courts agree. License is not registration. And plaintiff's argument has been made before by litigants every time it's been rejected. It was rejected by the appellate court in the Riggs case cited in our brief. It was rejected by the Illinois Supreme Court in Chatham Foot Specialists, which adopted the reasoning from Riggs. And as the courts pointed out, courts look to whether these statutes are meant to protect public or safety, public safety or welfare when deciding whether these registration requirements equal licensure. And so I mentioned those two cases. I'll start with Chatham Foot Specialists because that's the Illinois Supreme Court case on the issue. So in that case, an insurance company, Blue Cross Blue Shield, was seeking to void a contract with a podiatry clinic because that clinic had failed to register as a professional service corporation, right? They didn't have their certificate of registration, just as AWH doesn't have here. It's the same act we have in this case. Or I'm sorry, the same argument. You aren't registered, so you aren't licensed, so we shouldn't be subject to the legal consequences of our relationship with you. That was rejected by the Illinois Supreme Court. The court held that a certificate of registration to operate as a professional service corporation is not the same as a license under the Podiatry Medical Practice Act. And the court examined this issue at length. I mean, there's a good examination of it there. There are certain requirements to become a podiatrist, just as there are certain requirements to become a physician under the Medical Practice Act. And the court reviewed the Podiatry Medical Practice Act, reviewed the Professional Service Corp Act, and their finding, their holding was, the requirement imposed by professional service corporations to obtain a certificate of registration was not enacted as a regulatory measure to protect the health, safety, and welfare. We hold that the appellate court erred in concluding that the terms license and certificate of registration are synonymous. Okay, so they're saying there's a big difference between a license and a registration. They're not the same thing. Supreme Court goes on to say they're not functionally equivalent. They adopt the reasoning set forth in the Riggs case. It's Riggs v. woman-to-woman obstetrics and gynecology. It's also cited in our brief. And what the Riggs court examined is whether a physician at an OBGYN clinic was bound by a non-compete clause. And it's the same argument that we hear here. The physician argued, well, the contract should be voided because the clinic didn't have a certificate of registration, so they're not licensed, and so they're not authorized to practice medicine. Therefore, the contract is void. Trial court agreed. The appellate court reversed them and said, no, they're not the same thing. The function of the professional service corporation is permissive. It allows professionals to join together to enjoy the benefits of a corporation. And in discussing this, the Chatham court approved of this reasoning. So the Illinois Supreme Court, in what they said, this is the Chatham case, the court in Riggs emphasized that there is a clear difference between these two concepts, license and registration, because those statutes requiring licenses to practice profession are necessary for the public safety because they've been enacted to provide assurance of adequately trained professionals. In contrast, a violation of the act, the Professional Services Act, does not necessarily mean that the doctors lack the requisite medical skills to practice medicine. I'm sorry, it's the Medical Practice Act they're talking about there. I'm sorry, Medical Corporation Act. So a violation of the Medical Corporation Act does not necessarily mean that the doctors lack the requisite medical skills to practice medicine. So these statutes, you've got the Professional Services Act, the Medical Corporation Act. They allow professionals to come together to incorporate, enjoy the benefits of a corporation. So you have your tax advantages, your liability advantages. I'm not a corporate lawyer, but the ins and outs of those are not familiar to me, but they're not meant to protect public health. They're not equivalent to a license to practice medicine or a license to do anything else. And the Chatham case looked at the Professional Services Act, but it's the same situation we have here with the Medical Corporation Act. And these two statutes mirror each other. They mirror each other in purpose and they mirror each other in content. Plaintiff argues in his reply and also today that, well, the Medical Corporation Act is for public safety because they're an investigation to ensure that these physicians are licensed. And the Professional Service Corporation Act has that same requirement. It's at Section 805 ILCS 10-12. So there, the administrative body has to come in, make sure that the professionals are licensed and make sure that they're not under investigation. Those sorts of things before the certificate of registration is issued. And the Chatham Foot Specialist Court said that's not for public health, that's not for safety. And so it's the same situation that we have with the Medical Practice Act. Plaintiff relied on the Solich case, and the Solich case is quite distinguishable. The defendant in Solich was a nonprofit that did cancer screening. And the reason that Solich could not make use of the statute of repose is that it could not fit in one of those four categories, doctor, dentist, nurse, hospital, and wasn't qualified to fit in any of those categories. Here, we know that AWH, in fact, is in one of those categories. It is a physician under the Royale case, and it is licensed because Dr. Ogenle is licensed. It's incorporated under the Medical Corporation Act. And what the Solich court said was the court found there is no question that PORTUS does not fall with any of the categories of providers set forth in the statute. And it goes on to cite Royale v. Kim in the holding that the statutory reference to physician includes corporations formed to practice medicine under the Medical Corporation Act. PORTUS, who is the defendant in the Solich case, is not licensed and does not qualify to be licensed as a medical corporation under that statute. So the defendant in Solich was not licensed and could not be licensed. Here, we know that AWH is licensed. So it's a completely different situation. It's not contested that AWH is formed to practice medicine under the Medical Corporation Act. It's in the record. It's in the pleadings. It's admitted. Now, Plaintiff points out this language in the Royale case regarding licensing. And what it says, there's one sentence that says, moreover, a corporation formed to practice medicine must be licensed by the state. And then it cites an old version of the Medical Corporation Act. So it's one sentence. It's dicta. It's not the holding.  And since then, we've had Chatham. We've had the Chatham case come out 20 years later. We've had the Riggs case come out 20 years later. And they examined this issue at length. Plaintiff is relying on one sentence in a case from 1983 when there are cases, Illinois Supreme Court cases, one of them, within the last 15 years or so, I guess maybe 17, saying this is not licensing. Registration and licensing are different. He mentioned the IDFPR certificates that are in the record and that are attached. What those say is that department records were searched based upon the exact name and profession as provided. Any variation in the criteria given by the requester may produce different results. Those were searched under a name, Advanced Women's Health Care, with an apostrophe in the word women's. There is no apostrophe in Advanced Women's Health Care as incorporated. When Dr. Ogilney incorporated it, he didn't include the apostrophe. So those are completely unreliable. And it's puzzling that they say, you know, doesn't have a license because there is no licensing within the Professional Services Corporation Act or within the Medical Corporation Act. And another one more quick point on the topic of licensure. This is in the brief. But the complaint alleges that AWH is incorporated under the Medical Practice Act and authorized to do business. It does not use the word authorized. I'm sorry, it does not use the word licensed, but it says authorized. This is a judicial admission. They're authorized to do business. Makes the rest of these arguments irrelevant. Second, we talked about patient care and whether it arises out of patient care. And so the determination on whether or not the statute of repose applies is whether the action arises out of patient care, not whether it's institutional negligence or negligence against just a physician or a group based on agency. And this is another issue that's already been decided by the Illinois Supreme Court. In the ORLAC case, it's O-R-L-A-K, that's also cited in our brief. Court notes that arising out of patient care should be construed broadly. And what they say is, we have very recently discussed the degree of causation required by the phrase arising out of patient care in Section 13-12. They cite to the Brucker case, Brucker v. Mercola. And they say, we construe this phrase simply as requiring a causal connection between the patient's medical care and the injury. While the phrase does not need to be construed so broadly as to encompass but for causation, it clearly covers any injuries that have their origin in or are incidental to a patient's medical care and treatment. And so it's broadly construed. And in the ORLAC case, the plaintiff is alleging that the defendant hospital system, it's Loyola University in Chicago, didn't timely notify her that she may have contracted hepatitis C from a blood transfusion in 1989. Defendants argued the statute of repose applied. The claim was barred. Plaintiff argued, no, that doesn't arise out of patient care. This is not patient care. The trial court agreed with the defendant and found it arose. I'm sorry, agreed with plaintiff, found that arose out of patient care. Eventually, the Supreme Court said this does arise. I'm sorry. Trial court agreed with the defendant, found it did arise out of patient care. That was eventually upheld by the Supreme Court. So it's a similar situation here. Plaintiff's decedent had a procedure. She had a hysterectomy. She's alleging pathology results from that procedure were not properly conveyed to her. That clearly arises out of patient care. We have a failure to notify in the ORLAC case, failure to notify you may have contracted hepatitis C. Here, plaintiff alleges you failed to notify me of pathology results. They both arise out of patient care. There are other cases that are cited in our brief that show the breadth of this statute and what arising out of patient care means. There's Walsh, Miller, Stifler. I don't need to discuss them all today. But there's a lot of authority in support of the idea that this arise out of patient care. And, you know, plaintiff cited these cases on institutional negligence. And he's correct. There's a separate cause of action for institutional negligence. But that has no bearing on whether the statute of repose applies. And as set forth in our brief, none of those cases do apply because none of them examine the statute of repose. So, you know, I think because the case law is pretty clear here that this is registration and licensure are not the same thing. That a failure to obtain an administrative certificate and pay a $50 fee should not prevent AWH from making use of the statute of repose. The statute of repose has a very specific purpose, to shorten the long tail of MedMal cases. And if a failure to pay a $50 fee and to apply for a certificate of registration to hang on your wall is going to prevent that, that is a big problem for the medical community. Thank you for your time. Subject to any questions. That's all I have. I would ask that you affirm the trial court. I see no questions. Thank you, counsel. Mr. Moulton, you may make your rebuttal argument at this time, sir. Yeah, I'm not here to try to convince you that this treatment did not arise out of medical care. But the Supreme Court in Solich specifically stated that the statute of repose is not universally applicable to all actions arising out of patient care. And it applies by its terms only to actions brought against the four categories of licensed healthcare providers. With respect to the judicial admission, you know, we allege it was authorized in doing business. We did not allege that it was licensed. And that's not information that's a concrete fact within plaintiff's knowledge at the time of filing. And plaintiff's addendum clearly states that AWH was not licensed by IDFPR and did not qualify to operate under the Medical Corporation Act. I think that you can distinguish Riggs and Chatham. Those are contract cases. This is a case involving patient care. And those cases, if you read them closely, I believe they are discussing the Professional Service Corporation Act, not the Medical Corporation Act, especially if you look at the citations. I think that it's fair to say that the Professional Service Corporation Act and the Medical Corporation Act are different. The language do mirror each other. But when we're talking about other professions, you know, they're not necessarily intended to protect human health, while I think the Medical Corporation Act is. The most important thing I think that to take away from the Riggs and Chatham cases are that they are not examining the statute of repose. You know, those cases are discussing Professional Service Corporation Act. The issue in front of this court is the statute of repose. It says duly licensed. We have certifications saying that there was no license. And to the extent that counsel argues that the apostrophe makes the difference, I think that's a genuine issue of material fact. But also I think another genuine issue arises when you look at C-223 to 225, the affidavit of Jim Ginsky in those search results. If you're able to look up a license and a license number and it doesn't exist, I think that when you reconcile that with the statute of repose where it says licensed, Advanced Women's Health Care is not licensed. And then when we get to institutional negligence, irrespective of whether Dr. Ogunle is covered by the Medical Practice Act, there is the institution that has a duty, as we've alleged, to convey the results. And we feel that they've breached that duty. And that's why Solich is applicable, because the statute of repose is not universally applicable to all actions arising out of patient care. I don't have anything else. Thank you for your time. Thank you, counsel. The court will take this matter under advisement and issue a decision in due course, and we now stand in recess.